## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

OLEG TERESHKUN et al.,

      Plaintiffs,

      v.

KLM TRANS, INC. et al.,

      Defendants.

Case No. 24-cv-04000

Judge Martha M. Pacold

## MEMORANDUM OPINION AND ORDER

On October 21, 2024, the court entered default judgment against defendants Viktor Kotsyulym, Ihor Kotsyulym, and KLM Trans, Inc., after they failed to appear and respond to plaintiffs' complaint. [28].[1] Viktor Kotsyulym now moves under Fed. R. Civ. P. 60(b)(4) to set aside the default judgment against him, claiming that the court lacked personal jurisdiction to enter default judgment because plaintiffs did not properly serve him with process, rendering the default judgment void. [82]. But Viktor's motion comes too late. He did not file his motion until October 1, 2025, and he has not offered a reasonable explanation for his nearly one-year delay in bringing the motion. Under Fed. R. Civ. P. 60(c)(1) and *Coney Island Auto Parts Unlimited v. Burton*, 607 U.S. 155 (2026), that will not do—even for a challenge to the authority of the court to enter judgment. Accordingly, Viktor's motion for relief from judgment, [82], is denied as untimely.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this lawsuit on May 15, 2024. [1]. They are truck drivers who formerly drove and made deliveries on behalf of defendant KLM Trans, a company that describes itself as a "Transportation company." [6] ¶¶ 6–23. The operative complaint alleges that Ihor and Viktor Kotsyulym are president and secretary of KLM, respectively. *Id.* ¶ 24. According to plaintiffs, defendants unlawfully "ma[de] deductions from [plaintiffs'] wages and requir[ed] them to bear expenses which should have been properly borne by KLM Trans." *Id.* ¶ 2. Plaintiffs also allege that

---

[1] Bracketed numbers refer to docket entries and are followed by page and / or paragraph number citations. Page numbers refer to the CM/ECF page number.

"as a result of KLM's policies and practices, in their final weeks of work for KLM Trans, they and other delivery drivers did not receive any compensation." *Id.* Plaintiffs allege violations of the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 *et seq.*, the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 *et seq.*, and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

This opinion, however, is not about the merits of those claims. Rather, Viktor never appeared and the court entered default judgment. Viktor has moved for relief from that judgment on the grounds that the court lacked personal jurisdiction over him because he was never properly served. [82] ¶¶ 20–22. Such motions, however, must be filed in a timely manner. Before analyzing whether Viktor's motion was timely filed, the court describes plaintiffs' attempts at service and the procedural history of this case which occurred thereafter.

## I.    Plaintiffs' Attempts At Service

Plaintiffs claim that they served process on Viktor on June 21, 2024. In an affidavit filed in July 2024, Brian Taylor, a process server, averred that on June 21, 2024, he delivered the summons, complaint, and other documents to Viktor personally at a house located at 8721 Lakeridge Drive in Darien, Illinois (the "Darien Property"). [16]. Taylor's original affidavit included very little detail about his interaction with Viktor on that day. However, in an amended affidavit filed in December 2025, Taylor provided a more complete picture of what he says happened. [107].

According to Taylor's amended affidavit, a skip trace revealed that Viktor owned the Darien Property. *Id.* ¶ 5. The skip trace also revealed that Viktor owned a white Mercedes Benz with the Illinois license plate "KLOZER." *Id.* at 8. Before June 21, 2024, service was attempted on Viktor several times. A record attached to Taylor's amended affidavit that had been prepared by a different process server certified that on June 6, 2024, that other server knocked on the door of the Darien Property, and a person speaking through a Ring doorbell camera said that no one was home. [107] at 23. However, an individual working in the yard of the Darien Property told the server that Viktor was inside. *Id.* Subsequently, Taylor himself made three unsuccessful attempts to serve Viktor at the Darien Property on June 12, 17, and 20 of 2024. *Id.* ¶ 7. On that last attempt, Taylor says he heard a male voice through a Ring doorbell camera say that "Viktor was not at home." *Id.* ¶ 8.

On June 21, 2024, Taylor says he returned to the Darien Property and observed Viktor's white Mercedes backing out of the garage. *Id.* ¶¶ 10–13. Taylor's amended affidavit states:

> I ran up to the car, and knocked on the driver side window, and spoke with the man inside the car. My notes, taken on the day of this service attempt, state that I "spoke to Victor [*sic*] in car as it was backing out of the driveway plate number KLOZER. He said Victor [*sic*] doesn't live here and drove off but the plate verified that it's him. He lied to me. I left the papers at the door."

*Id.* ¶¶ 13–14. Taylor clarifies in his amended affidavit that he "left the Complaint and accompanying documents on top of a doormat on the covered front porch of the Darien Property." *Id.* ¶ 16. He also says that he later obtained two photos of Viktor from Viktor's Facebook page. *Id.* ¶ 15. Based on those photos, Taylor says, "I can confirm that the man I spoke with on June 21 was Viktor Kotsyulum [*sic*]." *Id.*

Viktor, however, claims that he never encountered Taylor on June 21, 2024. Taylor estimates in his amended affidavit that he served Viktor sometime between 1:36 and 1:55 p.m. *Id.* ¶ 17. But Viktor, in his own affidavit, states that "at 12:30 P.M." on the day in question, he had a virtual meeting "with attorney Saul Modestas" and "Irina Anton." [82] at 9. Viktor says he "attended from a desktop computer located at" the Darien Property and that "[a]t no time during the meeting did" he "leave or step away . . . nor" did he "hear a knock at the door, or the doorbell ring." *Id.* at 9–10. Viktor attached to his affidavit a document he says is a "screenshot of a text message from June 21, 2024, including where at 1:53 P.M.," he "sent a text message referencing" his "being in the meeting." *Id.* at 10. Viktor swears in his affidavit that he "was not served with legal papers on June 21, 2024." *Id.* at 10.

Viktor also filed affidavits from Saul Modestas and Irina Anton, who each confirm the meeting date and time, as well as Viktor's attendance at the meeting. *Id.* at 18, 22. Modestas further stated, "During the meeting, to the best of my recollection, Viktor did not leave to answer the door." *Id.* at 23. Anton similarly said, "To the best of my recollection, Viktor did not leave or step away from the meeting at any point during the meeting." *Id.* at 19.

## II.     Subsequent Procedural History

Plaintiffs made no further attempts to serve Viktor after June 21, 2024. On July 19, 2024, after Viktor's, Ihor's, and KLM's respective deadlines to respond to the Amended Complaint had passed, plaintiffs moved for entry of default against all three defendants. [17]. That same day, plaintiffs mailed the motion for default via overnight delivery to the Darien Property. *Id.* at 3; [110-1] ¶ 3. No defendant entered an appearance, and on August 2, 2024, default was entered against defendants under Fed. R. Civ. P. 55(a). [20]. Then, on August 24, 2024, plaintiffs moved for default

3

judgment against the three defendants, and plaintiffs again sent their motion via overnight mail to the Darien Property. [25] at 15–16; [110-1] ¶ 5. The court ordered defendants to respond to the motion by September 4, 2024, and plaintiffs mailed the court's order to the Darien Property. [26]; [110-1] ¶ 6. Defendants again failed to appear.

On October 21, 2024, due to defendants' nonappearance, the court entered default judgment under Fed. R. Civ. P. 55(b) against Viktor, Ihor, and KLM. [28]. Several months passed, and on May 13, 2025, plaintiffs served Viktor at the Darien Property with a citation to discover assets. [42] at 1. The citation notified Viktor that:

> On October 21, 2024, the court entered judgements in favor of Oleg Tereshkun et al. and against KLM Trans, Inc., Ihor Kotsyulym, and Viktor Kotsyulym, and it remains unsatisfied in the total amount of $356,437.78 plus interest and costs.

*Id.* at 5. Viktor has not argued that the May 13 service of the citation to discover assets was insufficient.

Following his receipt of the citation, Viktor did not promptly enter an appearance or respond to the citation. Therefore, the court set a hearing for August 21, 2025, and told Viktor that he may be held in contempt if he did not appear. [54] at 2. A day before that hearing plaintiffs, for the first time, heard from Viktor's (recently retained) counsel. [110-2] ¶ 5. Viktor's counsel appeared at the hearing on August 21, 2025, [66], and the court ordered Viktor to produce documents responsive to the citation by September 25, 2025, [72] at 3. But September 25, 2025, came and went, and Viktor did not send those documents. [110-2] ¶¶ 19–20.

Instead, on October 1, 2025, Viktor filed the present motion under Rule 60(b)(4) to set aside the October 21, 2024, default judgment against him. [82]. After Viktor filed his motion, the parties agreed to a period of limited discovery regarding the facts underlying Viktor's motion, and the court set a discovery deadline of December 5, 2025. [87] at 1. Plaintiffs requested document production from Viktor by November 19, 2025, and a deposition of Viktor on November 21, 2025. [110-2] ¶ 23. While Viktor did not object to those requests, he did not produce documents by November 19. *Id.* ¶¶ 23, 25. Accordingly, plaintiffs canceled the scheduled deposition. *Id.* ¶ 25. Plaintiffs filed their response to Viktor's motion on January 5, 2026, [110], and Viktor filed his reply on January 19, 2026, [113].

4

## ANALYSIS

Viktor moves under Rule 60(b)(4) to set aside the October 21, 2024, default judgment. He argues that he was not properly served with process on June 21, 2024, and that the court accordingly lacked personal jurisdiction over him. However, Viktor did not file his motion for nearly a year, and he has not offered a reasonable explanation for his delay.

Rule 60(b)(4) authorizes the court to "relieve a party . . . from a final judgment" when "the judgment is void." A judgment is void when "entered against a defendant over whom the court had no jurisdiction." *See Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 855 (7th Cir. 2011). Moreover, "valid service of process is necessary in order to assert personal jurisdiction over a defendant." *Mid-Continent Wood Prods., Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991). Therefore, Rule 60(b)(4) gives defendants an avenue to collaterally attack a default judgment on the grounds that they were not sufficiently served. *See id.* at 298.

"[M]otion[s] under Rule 60(b)," however, "must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). And that timeliness requirement applies to motions made under Rule 60(b)(4) alleging that a judgment is void for want of personal jurisdiction, as the Supreme Court has recently made clear. *See Coney Island*, 607 U.S. at 158–59. The timeliness rule therefore applies to this case.

That result might strike some as odd. It is well-recognized that a defendant is "always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment" for want of personal jurisdiction "in a collateral proceeding." *Id.* at 161 (quotation omitted); *see also Philos Techs.*, 645 F.3d at 856. Moreover, there is a "generally accepted maxim that a void judgment is a legal nullity." *Coney Island*, 607 U.S. at 159 (quotation omitted). Together, those principles might lead one to believe there can be no time limit on a Rule 60(b)(4) motion alleging that a judgment is void for want of personal jurisdiction. Nonetheless, Rule 60 is a procedural vehicle, and the Supreme Court explained the unobjectionable: the plain text of Rule 60(c)(1)'s timeliness requirement covers Rule 60(b)(4) motions. *Id.* at 158.[2] The court therefore turns to addressing whether Viktor's motion was timely filed.

---

[2] The Supreme Court did not, however, decide whether Rule 60(c)(1), as applied to Rule 60(b)(4) motions alleging defects in personal jurisdiction, is consistent with the Due Process Clauses of the Fifth and Fourteenth Amendments. *See Coney Island*, 607 U.S. at 159 (noting that appellant "disclaim[ed] any such argument."). In this case, too, Viktor has not presented that issue. *See* [120].

Rule 60(c)(1) requires that a Rule 60(b)(4) motion "be made within a reasonable time." District courts have the "discretion" to determine what satisfies that standard. *Planet Corp. v. Sullivan*, 702 F.2d 123, 127 (7th Cir. 1983). That said, the Seventh Circuit has opined on the relevant factors. What "constitutes 'reasonable time'" for Rule 60(b) motions "depends on the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability to learn earlier of the grounds relied upon, and prejudice to other parties." *Id.* at 126 (quoting *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981)). And importantly, the burden is on the movant to make that showing. *See id.*; *Simon v. Pay Tel Mgmt., Inc.*, 1992 WL 9429, at *8 (7th Cir. Jan. 22, 1992) (unpublished) (noting that defendants "failed to carry" their burden to establish "that their delay was reasonable"); *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992) (noting that the "moving party" has the burden for other Rule 60 motions).

Viktor has not carried his burden; rather, the record reflects that Viktor simply ignored the default judgment and then filed the current motion at the eleventh hour. As discussed, Viktor was allegedly served on June 21, 2024. [107] ¶ 10. On August 2, 2024, default under Rule 55(a) was entered against Viktor. [20]. Thereafter, on October 21, 2024, the court entered default judgment against Viktor. [28]. Yet following the entry of default judgment, Viktor did not promptly file an appearance. Then on May 13, 2025, Viktor was served with a citation to discover assets. [42] at 1. That citation, which Viktor does not deny receiving, mentioned the default judgment. *Id.* at 5. (Indeed, a citation to discover assets is a method of enforcing a judgment.) Yet Viktor still did not appear for several months. It was not until August 20, 2025, ten months after default judgment was entered and more than three months after Viktor was served with the citation, when plaintiffs first heard from Viktor's counsel. [110-2] ¶ 5. And it was still over a month after that when, on October 1, 2025—nearly a year after default judgment was entered—Viktor filed the current motion under Rule 60(b)(4) challenging default judgment.

Viktor has not pointed to any facts which justify that lengthy delay. The *Coney Island* Court mentioned that delay might be reasonable where a defendant has "not learn[ed] about the proceedings until long after the judgment issue[d]." 607 U.S. at 160. But Viktor does not claim he was unaware of the suit, and the record strongly suggests that he was aware of it. For instance, Viktor's codefendants—with whom he is in business—were served with plaintiffs' complaint in the same month as Viktor, and they do not claim that service was improper. *See* [8] at 2; [11] at 2. If Viktor's associates knew about this suit in June of 2024, reason suggests that Viktor did too. Also, in July and August of 2024, plaintiffs sent several notices of their motions for

default and default judgment, along with a court order giving Viktor a week to object to entry of default judgment, via overnight mail to the Darien Property. [110-1] ¶¶ 3–6; [17] at 3; [25] at 15–16. Viktor does not deny receiving these notices. Finally, Viktor does not contest that he received the citation to discover assets on May 13, 2025. Yet he did not file the current motion until October 1, 2025. For a suit in which he was already derelict in participating, the over four-month delay between Viktor's receiving the citation and filing his motion is patently unreasonable.[3]

The Seventh Circuit has noted that delay in filing a Rule 60(b)(4) motion can be reasonable when, in the period following default judgment, the defendant was otherwise "engaged in . . . litigation activities, such as settlement discussions." *Kangol LLC v. Hangzhou Chuanyue Silk Imp. & Exp. Co.*, 177 F.4th 793, 797 (7th Cir. 2026). That did not occur in this suit. Despite the almost undeniable facts that Viktor knew about this suit when he and his codefendants were served in June of 2024, and that he knew about the default judgment when the court entered it in October of 2024, and that he was reminded of the default judgment in May of 2025 when he was served with the court's citation to discover assets, plaintiffs did not receive any communication from Viktor until August of 2025. [110-2] ¶ 5.

At oral argument, Viktor's current counsel suggested that Viktor's delay may have been due to his poor understanding of the legal system. The court does not credit this excuse. To start, litigants are responsible for retaining counsel when they are unsure about how to proceed in a lawsuit. It would be perverse for a litigant to be able to manufacture an excuse not to participate in the suit by simply failing to retain counsel for several months following a default judgment: Viktor "had adequate time" "to retain . . . counsel," and his decision not to use it was not "excusable" or "good cause" for his dereliction of litigation duties. *Jones v. Phipps*, 39 F.3d 158, 164 (7th Cir. 1994). Moreover, the court does not agree that Viktor is an unsophisticated party. The record evidence supports the opposite. For example, Viktor says that at the time he was allegedly served on June 21, 2024, he was in a meeting with Saul Modestas, a lawyer. Modestas, in his affidavit, stated that he and Viktor were "discuss[ing] various legal matters, including, but not limited to, various debts of KLM Trans, Inc." [82] at 22. Viktor was no stranger to the legal system.

The court recognizes the gravity of a potentially jurisdiction-less judgment. That said, it would be "extreme" were a court "requir[ed] . . . to keep [its] doors

---

[3] Furthermore, due to Viktor's failure to cooperate during discovery related to his motion, plaintiffs were unable to ask Viktor about his knowledge. Neither did Viktor through discovery establish any facts suggesting that he was unaware of the default judgment in October of 2024. Again, it is Viktor's burden to establish the reasonableness of his delay.

perpetually open to allegations of voidness." *Coney Island*, 607 U.S. at 159. In exercising its discretion to determine the reasonableness of Viktor's delay, the court determines that all relevant factors point toward unreasonableness. The record is quite clear that Viktor knew about the default judgment early on. *Planet Corp.*, 702 F.2d at 126. Moreover, Viktor has proffered no compelling reason for delay. *See id.* Given the age of this suit and the fact that Viktor has generally been noncompliant in participation in the suit, the court determines that there is a high "interest in finality" and that further delay would be highly "prejudic[ial]" to plaintiffs. *Id.*

## CONCLUSION

Accordingly, defendant Viktor Kotsyulym's motion to set aside default judgment, [82], is denied under Fed. R. Civ. P. 60(c)(1).

Dated: August 6, 2026                                    /s/ Martha M. Pacold